United States District Court
Southern District of Texas

**ENTERED**

October 12, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANAE SKIBA, MELISSA COOK, and SARAH DAILEY, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-cv-02656 |
| BRIAN MURTHY TIMOTHY a/k/a/ T. BRYAN MURPHY, and GGH – THE FITNESS GROUP, LLC d/b/a GOLD'S GYM HOUSTON, | § § § § § | |
| *Defendants*. | § | |

## ORDER

Pending before the Court is Defendants GGH-THE FITNESS GROUP, LLC ("TFG") and T. Bryan Murphy's ("Murphy") (collectively, "Defendants") Motion for Summary Judgment (Doc. No. 56). Plaintiffs Danae Skiba ("Skiba"), Melissa Cook ("Cook"), and Sarah Dailey ("Dailey") (collectively, "Plaintiffs") responded in opposition (Doc. No. 61), and Defendants replied (Doc. No. 65). Plaintiffs filed an opposing Motion for Partial Summary Judgment (Doc. No. 58), to which Defendants responded in opposition (Doc. No. 62) and Plaintiffs replied. (Doc. No. 66). Having considered the Motions, the parties' briefs, and the applicable law, the Court hereby **GRANTS IN PART** Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

## I.      Background

This lawsuit centers around alleged violations of the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Equal Pay Act ("EPA").

Defendants set out a factual background that, for the most part, is unchallenged by Plaintiffs. The Court will use their description to put the competing summary judgment motions in context. Defendant TFG is a management company that provides managerial services for five gyms. Each of the gyms are owned by a separate "Operating Entity" that is an affiliate of TFG. Each Operating Entity maintains their own employees and payroll. TFG maintains its own employees and payroll separately. Maintaining this separation is important to TFG, as it allows the enterprise to accurately capture revenue and expenses at each location for each Operating Entity and allows the TFG overhead to be allocated between the various Operating Entities. TFG and the Operating Entities used to be Gold's Gym franchisees; however, TFG and the Operating Entities rebranded as FITNESS PROJECT immediately before Gold's Gym filed for bankruptcy protection due to COVID-19 related shutdowns.

As alleged, Skiba was employed as a Fitness Manager, Cook was employed as a Payroll Specialist, and Dailey was employed as a Corporate Office Manager by Defendants. (*See* Doc. No. 22). Plaintiffs Skiba, Cook, and Dailey have different facts giving rise to their claims, so the Court will summarize them separately below.

A. Skiba

From approximately November 2019 until July 2020, Defendants[1] employed Skiba as a Fitness Manager. (Doc. No. 22 at 2). Skiba was placed on a flexible schedule around December of

---

[1] It is unclear from the briefings which Defendant, if any, employed Plaintiff Skiba. Under the FSLA, an "employer" is a defined term and refers to "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). In their Motion for Summary Judgment "Statement of Undisputed Facts," Defendants state that Skiba was employed by FP Humble, LLC, formerly known as GGH-Humble. (Doc. No. 56 at 8). Defendants say that "Skiba was never employed by TFG." *Id.* By contrast, in their Motion for Partial Summary Judgment "Statement of Facts," Plaintiffs state that Skiba "was employed by Defendants at their 'Parks Lake' location in Humble." (Doc. No. 58 at 7). Despite this seeming disagreement, neither party briefed the issue of whether Plaintiff Skiba was an actual employee of any of the named Defendants or of some other operating entity. Therefore, this Court will then assume, for the purposes of Summary Judgment, that Plaintiff Skiba was employed by Defendants.

2019 and tracked her hours daily through a computerized time keeping system. (*Id.*). Although Defendants informed Skiba that she was to be paid a prorated amount twice a month, she allegedly received an unpredictable variable amount each pay period and was not properly compensated for hours worked in excess of 40 hours weekly. (*Id.* at 5). Skiba alleges that Defendants misapplied paid time off ("PTO") to partial absences and illness related absences and her hours were often reflected incorrectly in Defendants' timekeeping records. (*Id.*). She also contends that Defendants alleged that she lacked sufficient PTO to cover certain absences, which resulted in her pay being calculated at a reduced hourly rate, rather than being paid on a salary basis. (*Id.*). After addressing these concerns with her superiors and sending an email complaint to the corporate office, Skiba was allegedly written up for insubordination and contends that she was eventually pushed out of the company. (*Id.*). Skiba claims she was constructively discharged from her role in July 2020. (*Id.* at 8).

B. Cook

Cook began working for Defendant TFG in November 2009 as a Payroll Specialist and alleges that she was subject to sex based discrimination and unequal compensation over the course of her employment. (*Id.* at 8). Cook alleges she was routinely subject to a hostile work environment involving sexist remarks, ridicule from Defendant Murphy, criticisms of her appearance, and was often pitted against other female employees. (*Id.*). Furthermore, Cook also contends she was compensated at a lower rate than her male counterparts for similar or equal work, was forced to apply PTO hours to partial absences, and subjected to a reduced pay rate. (*Id.*). Cook alleges she was terminated after being locked out of Defendant TFG's employee system around October 2020. (*Id.* at 9).

C.  Dailey

Dailey began working for Defendant TFG around February 2014 as a Corporate Office Manager. (*Id.* at 9-11). Dailey alleges she was subjected to sex-based discrimination, hostile work environment, unpaid overtime wages, and unequal compensation as compared to her male counterparts. (*Id.* at 10-11). Dailey contends that on October 7, 2020, she "discovered that she was terminated from her position" when she was unable to log in to the computer system using her credentials. (*Id.* at 13).

D.  Present Dispute

The FLSA requires that covered employers compensate non-exempt employees at a rate of no less than one and a half times their regular hourly rate for all hours worked in excess of 40 hours per week. All three Plaintiffs were classified by Defendants as exempt employees under the FLSA. (*Id.*). Plaintiffs claim they were allegedly all misclassified as exempt by Defendants to avoid paying them for hours worked in excess of 40 hours per week. (Doc. No. 38 at 1). According to Plaintiffs, Defendants adopted an unwritten policy that deducted PTO for employee absences and deducted pay when an employee was absent and had insufficient PTO remaining. (*Id.* at 1-2). Plaintiffs allege that these improper deductions resulted in a compensation scheme in which they were paid on an hourly, rather than salary basis. Thus, Plaintiffs allege that, in violation of the FLSA, they were improperly compensated based on hours worked and were thus "exempt" employees in name only.

Based on their Second Amended Complaint, Plaintiffs collectively bring five causes of action: (1) unpaid overtime wages under 29 U.S.C. § 201 *et. seq.*; (2) unequal pay under the EPA; (3) hostile work environment under Title VII of the Civil Rights Act of 1964; (4) failure to maintain

accurate records; and (5) collective action under 29 U.S.C. § 216(b).[2] Additionally, Plaintiff Skiba,

individually, brings a separate cause of action for retaliation under 29 U.S.C. § 215(a)(3). (*See*

Doc. No. 22).

Defendants filed this Motion for Summary Judgment, contending as a matter of law that

(1) Plaintiffs' FLSA claims fail because each Plaintiff is an exempt employee; (2) Plaintiffs' EPA

claims fail because Skiba was among the highest paid Fitness Managers, Cook's replacement was

female, and Dailey's cohort members were all female; (3) Skiba's retaliation claim fails because

she dismissed the underlying improper deduction claim and suffered no adverse employment

action; (4) Plaintiffs' Title VII hostile work environment claims fail because they cannot prove

actionable harassment; and (5) Plaintiffs' failure to maintain records claim fails because this cause

of action does not exist.[3] (Doc. No. 56 at 7). Plaintiffs responded in opposition (Doc. No. 61) and

Defendants replied (Doc. No. 65).

Plaintiffs also filed a Motion for Partial Summary Judgment, contending as a matter of law

that (1) Plaintiffs were misclassified as exempt employees and are entitled to unpaid overtime

under 29 U.S.C. § 207, and (2) Plaintiff Skiba was constructively discharged in retaliation to

protected activity in violation of 29 U.S.C. § 215. (Doc. No. 58). Defendants responded in

opposition (Doc. No. 62) and Plaintiffs replied (Doc. No. 66).

---

[2] The Court already addressed Plaintiffs' collective action claim when it denied Plaintiffs' Motion to Certify Class (Doc. No. 70).

[3] Although employers are required to maintain certain employee records, the FLSA and its corresponding regulations do not provide for a cause of action when employers fail to adhere to this requirement. *See* Records to Be Kept By Employers, 52 Fed. Reg. 24896 (July 1, 1987). Since no private right of action exists, the Court hereby grants summary judgment on this issue without further discussion. *See* 29 U.S.C. § 211(c); *Lobo v. Spring Safety, Inc.*, 2020 WL 1695888 at *2 (S.D. Tex. 2020) (holding that evidence of recordkeeping violations can be used to support a properly pleaded FLSA claim, but does not permit Plaintiff to enforce provisions of the Act that are exclusively vested in the Department of Labor). Therefore, without further discussion, the Court grants Defendants' motion on this ground.

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III.    Evidentiary Objections

The Court will address the parties' evidentiary objections first. Plaintiffs attached approximately 15 exhibits as 'evidence' in support of their Motion for Partial Summary Judgment. (*See* Doc. Nos. 58-2-52-16). These exhibits include payroll records (Plaintiffs' Ex. A-1, A-2, C;

6

D, H; Doc. Nos. 58-2; 58-3; 58-5; 58-6; 58-10; 58-16), various email and text communications (Plaintiffs' Ex. B, E, F, I, J; Doc. Nos. 58-4; 58-7; 58-8; 58-11; 58-12), Skiba's Fitness Manager Contract (Plaintiffs' Ex. G; Doc. No. 58-9), Skiba's PTO request form (Plaintiffs' Ex. K; Doc. No. 58-13), Skiba's Counseling for Improved Performance Form (Plaintiffs' Ex. L; Doc. No. 58-14), and a Gold's Gym employee handbook. (Plaintiffs' Ex. M; Doc. No. 58-15).

In their Response in opposition to Plaintiffs' Motion for Partial Summary Judgment, Defendants objected to all of Plaintiffs' evidence. Specifically, Defendants argue that none of Plaintiffs' exhibits have been properly authenticated and are hearsay, rendering them all inadmissible. (Doc. No. 62 at 7). In their Reply, Plaintiffs argue that all of the attached evidence to their motion was "provided by Defendants in discovery as they were held in the normal course of business" and therefore not hearsay under Federal Rule of Evidence 803(6). (Doc. No. 66 at 3). Plaintiffs also claim that since the documents were produced by Defendants during discovery, Defendants cannot then challenge the authenticity of its own records and the evidence is admissible as a party admission under Federal Rule of Evidence 901(b)(4). (*Id.*). The Court notes that none of Plaintiffs' attached "evidence" is accompanied by a declaration or affidavit that authenticates it or lays a foundation for admissibility. (*See* Doc. No. 58).

A. Authenticity Objection

As noted, Defendants object to all exhibits attached to Plaintiff's motion because they were not properly authenticated. Defendants do not challenge the individual documents with any specificity; rather, Defendants appear to merely challenge Plaintiff's failure to attach an authenticating affidavit. (Doc No. 62 at 6).

Plaintiffs respond that the exhibits are sufficiently authenticated because they were produced by Defendants and because they can be authenticated by a witness at trial. (Doc. No. 66 at 3). The Court has reviewed the challenged exhibits and the parties' submissions on the issue.

In view of Defendants' failure to challenge the documents' authenticity with any specificity, the Court finds that the only logical explanation for the existence of most of the documents in Defendants' files is that they are authentic. Each one of the challenged documents has the appearance of authenticity, which is a factor that may be considered by a court. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1190, 1224 (E.D. Pa. 1980). Moreover, the substance of each of the documents lends credence to arguments for their authenticity. More importantly, Defendants rely, in part, upon the very records Plaintiffs attach to support their own arguments in Response, which further bolsters this point. (*See* Doc. No. 62, at 10, 12).

The Court finds that there is sufficient evidence of the challenged documents' authenticity to consider those documents for purposes of this Motion for Summary Judgment only. Defendants' objection is overruled.

B. Hearsay

Defendants also object to all exhibits attached to Plaintiffs' motion based upon hearsay. (Doc. No. 62, at 6). Plaintiffs respond that the documents are not hearsay under Fed. Rule of Evid. 803(6) because they were kept in the normal course of Defendants' business. (Doc. No. 66, at 3).

Defendants object with a boilerplate, one sentence objection that fails to cite to any specific exhibit. Moreover, the Defendants did not explain as to how this objection applies to each document, so this Court is left guessing at the arguments underlying them. One possibility is that the Defendants objected on the ground that the documents themselves would not be admissible at trial because they are out-of-court statements offered for their truth. *See* Fed. R. Evid. 801(c), 802.

8

In some instances at summary judgment, however, evidence need not be in "a form that would be admissible at trial," but, rather, it is the contents within the evidence that must be provable. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(c)(2). For example, to the extent that the exhibits were kept during the normal course of Defendant's business and a custodian would be able to testify to that at trial, those exhibits would be admissible under the business records exception to hearsay. *See* Fed. R. Evid. 803(6). To the extent the exhibits recount statements made by Defendants or their authorized agents, they might be admissible as non-hearsay statements of a party opponent. *See* Fed. R. Evid. 801(d)(2). Hearsay, therefore, might not provide a basis for excluding the objected-to documents in their entirety.[4]

Without cogent arguments by the parties, the Court is left applying these broad standards to Plaintiff's exhibits. The Court finds that, for the purpose of summary judgment, it will consider the following exhibits as business records under Rule 803(6): Defendants' payroll records (Doc. Nos. 58-2; 58-3; 58-5; 58-6; 58-10; 58-16), employee handbook (Doc. No. 58-15), PTO request form (Doc. No. 58-13) and Skiba employment contract (Doc. No. 58-9).

Additionally, the Court will consider the following exhibits as admissions by party opponent under Rule 801(d)(2): Skiba's Counseling for Improved Performance Form (Doc. No. 58-14 at 2, 3), emails from Defendants' accounting manager, Ashley Sudwischer, (Doc. No. 58-4), email from Defendant T. Bryan Murphy titled Important Company Announcement (Doc. No. 58-7), and email from Kristin Murphy subject line Reopening Comp Plan (Doc. No. 58-8, at 7).

As to the remaining exhibits, the Court sustains the objection and will not consider them in reaching its decision.

---

[4] While the Court finds the Defendants' objections superficial, it finds the Plaintiffs' effort in presenting the exhibits in an acceptable summary judgment form and their responses to objections to be less than sufficient as well. Both sides will need to do better at trial.

9

## IV.    FLSA Claims

The competing motions for summary judgment are somewhat overlapping as to Plaintiffs'
FLSA claims, so the Court will address the crux of the parties dispute first—whether Plaintiffs are
exempt employees under the FLSA.

Defendants argue that Plaintiffs' FLSA claims fail to raise a genuine issue of material fact
because each Plaintiff was an exempt employee. (Doc. No. 56 at 12). Specifically, Defendants
contend that each Plaintiff is exempt because they were employed in a bona fide administrative
capacity. (*Id.* at 15). In their Response in opposition and Motion for Partial Summary Judgment,
Plaintiffs concede that they performed administrative functions but argue that Defendants
misclassified them as exempt. They argue that, had they not been misclassified as exempt, they
would be entitled to overtime pay as hourly employees under the FLSA. (Doc. Nos. 61 at 2; 58 at
11-17).

The FLSA requires employers to pay overtime compensation to employees who work more
than forty hours per regular workweek. 29 U.S.C. § 207(a)(1). Exempt from the FLSA, however,
are individuals "employed in a bona fide executive, administrative, or professional capacity." 29
U.S.C. § 213(a)(1). If an employer has hired an employee on the premise that she is exempt from
the overtime pay guarantee, and she works overtime hours, but she believes herself
"misclassified," then she may bring a misclassification action under the FLSA. *Hills v. Entergy
Operations, Inc.*, 866 F.3d 610, 612 (5th Cir. 2017). If the court agrees that the employee is not,
in fact, subject to an FLSA exemption, then she is entitled to backpay to compensate the overtime
hours she worked without benefiting from an overtime rate. This lawsuit is, in essence, a
misclassification action.

For purposes of determining whether an employee is an "administrative employee" under the FLSA's overtime compensation exception, 29 C.F.R. § 541.200(a) provides that the employee is administrative if he or she: (1) is compensated on  salary or fee basis of no less than $684 per week; (2) has primary duties involving the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) has primary duties that include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(1)-(3).

The parties do not seem to dispute that Plaintiffs' roles satisfy the second and third requirements.[5] It is the first element—whether the employees were compensated on a salary or fee basis of no less than $684 per week—that underpins this dispute. Plaintiffs assert that they were "salaried" in name only, and that their actual pay resembled that of hourly employees. Plaintiffs contend that Defendants used an unwritten policy that permitted improper deductions allowing for Defendants to misapply PTO, which resulted in salary reductions for Plaintiffs. These improper deductions thus destroy the argument that they are exempt.

This Court finds that, based on the emails from Defendant's management team and Plaintiffs' Skiba and Dailey's payrolls, there is a genuine issue of material fact as to whether those Plaintiffs were exempt from the FSLA's overtime requirements. Accordingly, Defendant's Motion for Summary Judgment on these claims is hereby denied.

As previously mentioned, to qualify as an "exempt" employee under the FSLA, that employee must be "compensated on a salary or fee basis of no less than $684 per week." 29 C.F.R. § 541.200(a)(1). To be paid on a salary basis, an employee must regularly receive each pay period a predetermined amount which is "not subject to reduction because of variations in the quality or

---

[5] "Plaintiffs do not dispute that they were engaged in executive (Plaintiff Skiba) and administrative (Plaintiffs Cook and Dailey) capacities." (Doc. No. 58 at 12).

quantity of the work performed." 29 C.F.R. § 541.602(a). Furthermore, "an exempt employee must

receive the full salary for any week in which the employee performs any work *without regard to*

*the number of days or hours worked.*" 29 C.F.R. § 541.602(a)(1) (emphasis added).

Subsection (b) of this section outlines the rare instances in which an employer may deduct

an employee's pay and nevertheless retain the protections of paying on a salary basis. Most

applicable are (b)(1) and (b)(2), which read:

> "(1) Deductions from pay may be made when an exempt employee **is**
> **absent from work for one or more full days** for personal reasons, other than
> sickness or disability. Thus, if an employee is absent for two full days to handle
> personal affairs, the employee's salaried status will not be affected if deductions are
> made from the salary for two full-day absences. However, if an exempt employee
> is absent for one and a half days for personal reasons, the employer can deduct only
> for the one full-day absence.
>
> (2) Deductions from pay may be made for **absences of one or more full**
> **days** occasioned by sickness or disability (including work-related accidents) if the
> deduction is made in accordance with a bona fide plan, policy or practice of
> providing compensation for loss of salary occasioned by such sickness or disability.
> The employer is not required to pay any portion of the employee's salary for full-
> day absences for which the employee receives compensation under the plan, policy
> or practice. Deductions for such full-day absences also may be made before the
> employee has qualified under the plan, policy or practice, and after the employee
> has exhausted the leave allowance thereunder…"

29 C.F.R. § 541.602(b)(1)-(2) (emphasis added).

Defendants' employee handbook replicates this regulation nearly verbatim in the portion

titled "7.3 Exempt Employee Reduction in Salary." (Doc. No. 58-15).

A. Skiba and Dailey

Despite these written policies, Plaintiffs Skiba and Dailey have presented sufficient

evidence putting into question Defendants' pay practices and thus raising a fact issue as to whether

she has been misclassified. Both Skiba's and Dailey's payroll slips do not show that they received

their predetermined amount each pay period; rather, the total pay appears to vary based on the

12

number of hours worked. (Docs. Nos. 58-3, 58-5, 58-10). For example, Plaintiff Dailey received less than her normal salary per pay period in her May 18, 2018, paycheck after taking a 4-hour leave of absence. (Doc. No. 62 at 12).[6]

Moreover, emails from the management team appear to arguably contravene the regulations' requirements for salaried employees. First, an email dated May 11, 2020, from Kristi Murphy to Plaintiff Skiba states, in relevant part, "[t]he full salary will apply this week only but PTO and deductions will begin when the gyms are open, starting the 18th." (Doc. No. 58-8 at 7). This email raises an issue as to whether the Plaintiffs were misclassified because it indicates that on, any other given week, Plaintiffs are not actually guaranteed their full salary, and instead will be paid based upon how many hours they work.

Second, in an email dated July 8, 2020, from accounting manager Ashley Sudwischer to Plaintiff Skiba, Sudwischer responds to Skiba's concern that she was being paid as an hourly, rather than a salaried, worker. It states:

> "An hourly employee has a set hourly rate and is only paid off their clock-ins through the time clock and also gets paid overtime. A salaried employee is required to be paid a certain amount of wages per year and does not get paid overtime (**still needs to clock in for accountability and legal purposes**). **Salaried employees are required to follow the PTO policy the same as hourly employees**. Any time an employee is unable to work their scheduled shift, the employee must submit a PTO request and either check to use PTO or not to use PTO…. There's permissible reasons to dock an employee's pay, and as long as the employee is making the minimum at the end of the year, the company is in compliance . . . **It wouldn't make sense for the company to pay an employee for a full day's work if they clocked in for 5 minutes and left . . . All of your checks won't look the same**

---

[6] In their Response to Plaintiffs' Motion for Partial Summary Judgment, Defendants attempt to explain away pay deductions like this one. (Doc. No. 62 at 12). They argue that the "limited instances of partial pay deductions falls squarely within §541.603(c)." (*Id.* at 14). Section 541.603(c) explains that isolated or inadvertent deductions do not cause an employee to lose exemption status so long as the employer reimburses the employee for the improper deductions. Defendants seem to argue that Dailey was "reimbursed" for her deductions because in later instances, she was deducted fewer hours than she was absent. (*See Id.* at 14) ("By deducting 14 hours instead of 22, TFG made up for any shortfall on the November 5, 2018 paycheck"). However, the Court cannot find that Defendants' deductions were either inadvertent or isolated as a matter of law, especially given the emails from management discussed in the text and the apparent frequency with which Plaintiffs Skiba and Dailey were subject to partial day deductions. Thus, Defendants' argument fails here.

> **unless there's a full pay period that's worked** or enough PTO to cover any time off... Also, since it's an "At Will Employment," there's no contract that was signed that states the company is required to pay someone regardless of whether or not they show up."

(Doc. No. 58-4 at 4) (emphasis added).

Like the email from May 11, this email is concerning. It certainly suggests that Defendants were using their timekeeping policy as a way to pay "exempt" employees less than their guaranteed weekly amount. Specifically, the line "all your checks won't look the same" raises a fact issue as to whether Defendants complied with the FLSA regulations with regard to salaried employees.

Finally, Plaintiff Skiba's PTO Request Form dated July 13, 2020, completed by supervisor J. Ageitos, appears to deduct from Skiba 1.5 hours of PTO. (Doc. No. 58-13). As noted above, for salaried employees, the allowed deductions for sickness must be deducted in full day increments. 29 C.F.R. § 541.602(b)(1). In fact, the PTO Request Form itself has a check-the-box section asking the supervisor if the employee is hourly or salaried. Next to the box labeled salaried, the form says "(full days only)." Conveniently, neither box is checked on Skiba's form. Nevertheless, she was subjected to a 1.5 hour deduction, which is enough to raise a fact issue on misclassification.

Taken together, the discrepancies in the payrolls, emails, and PTO Request Form make Defendant's Motion for Summary Judgment wholly improper on Skiba's and Dailey's FSLA misclassification and overtime claims. Defendants cannot "have their cake and eat it too." They cannot circumvent the FSLA's protections by paying salaried workers as hourly ones but then deny them overtime pay. Plaintiffs Skiba and Dailey have raised issues of material fact as to their

14

FSLA claims for misclassification and overtime pay.[7] Defendants' Motion for Summary Judgment is hereby denied as to Plaintiffs Skiba and Dailey's FSLA claims.[8]

## B. Cook

Plaintiff Cook, however, has failed to meet her burden of showing a genuine issue of material fact exists showing she were misclassified. The only evidence this Court has for Plaintiff Cook is one payroll record indicating a reduction in normal salary. (Doc. No. 58-16 at 55). Plaintiffs argue that "while Cook was only subjected to an improper reduction in salary once during the relevant period, Defendants lost the exemption for her by failing to reimburse her for the improper deduction." (Doc. No. 58 at 14-15). As Defendants note, however, the one time that Cook's salary was changed was during her final week of work. (Doc. No. 62 at 7). During that week, she was paid only for the days she worked. Under 29 C.F.R. § 541.602(b)(6), an employer may deduct an exempt employee's pay during that employee's final week of work without losing exempt status. Without evidence of an improper pay deduction, Plaintiff Cook has not presented sufficient summary judgment evidence that she was misclassified under the FSLA, and therefore cannot proceed with her suit for overtime wages. Defendants' Motion for Summary Judgment is hereby granted as to Plaintiff Cook's FSLA claims.

---

[7] Defendants present some case law allegedly supporting the idea that "partial pay deductions of PTO do not preclude characterizing an employee as being compensated on a salary basis." (Doc. No. 62 at 6). However, these cases are distinguishable because, while the exempt employees had a pay scheme involving PTO applied hourly, they did not receive less pay than the statutory minimum on a weekly basis. The heart of the issue here, for Skiba and Dailey, is inconsistent pay.

[8] In Plaintiffs' Motion for Partial Summary Judgment, their Prayer for Relief includes a request for reasonable attorney's fees under the FSLA. (Doc. No. 58, at 20). This request is denied without prejudice at this time. Under the FLSA, an employer who violates the statute is also required to pay attorney's fees. 29 U.S.C. 216(b) The Fifth Circuit uses the 'lodestar' method to calculate attorney's fees. *Black v. Settlepou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Id.* Plaintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment. *Id.*

15

## V.      Equal Pay Act

Defendants also contend that Plaintiffs' wage discrimination claims arising under the Equal Pay Act fail as a matter of law. To state a prima facie case for wage discrimination under the EPA, a plaintiff must show (1) that the employer pays different wages to men and women, (2) that the employees perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility," and (3) that the employees perform their jobs "under similar working conditions." *Thibodeaux-Woody v. Hous. Cmty. Coll.*, 593 Fed. App'x 280, 283 (5th Cir. 2014) (citing 29 U.S.C. § 2016(d)(1)). Once the employee has carried her burden to show unequal wages, "the burden shifts to the employer to show that the differential is justified under one of the [EPA's] four exceptions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).[9] Here, the only relevant exception among the four is the fourth, which is "a differential based on any factor other than sex." *Id.*

A.  Skiba.

Defendants argue that Skiba's EPA claim fails because she "was among the highest paid Fitness Managers and none of the Operating Entities currently employ Fitness Managers." (Doc. No. 56 at 23). Defendants cite to their Fitness Manager Salary Report, which shows that of 31 employees, 29 were male and two were female, and Plaintiff was the third highest paid. (*Id.*; Defendants' Exhibit 2-C; Doc. No. 57 at 77). According to Defendants, the two males who were paid more than Skiba were Regional Fitness Managers who had "much greater longevity" and their "job functions and working conditions were different." (Doc. No. 56 at 23). Defendants maintain

---

[9] The four exceptions—three specific and one general catchall provision—allow different payment to employees of opposite sexes if made pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass*, 417 U.S. at 196.

that the "average pay for female Fitness Managers was higher than for [m]ales," so Skiba cannot meet her burden to show unequal wages. (*Id.*).

In response, Plaintiffs contend that Defendants' assertions rely on incomplete information. (Doc. No. 61 at 7). Specifically, Plaintiffs contend that although Skiba was among the highest earning Fitness Managers, Defendants' arguments rely on wage records which refer only to base pay. The records allegedly fail to list bonus and commission amounts that would demonstrate a discrepancy between Skiba and male Fitness Managers. (*Id.*). Plaintiffs cite generally to Defendants' Fitness Manager Salary Report, where they contend that Zachary "Zeke" Phizacklea, one of the male Fitness Managers who allegedly made more than Skiba, earned over one thousand dollars in commission in addition to standard base pay, to support this contention. (Defendants' Ex. 2C; Doc. No. 57 at 77). Thus, Plaintiffs maintain that Skiba's EPA claim stands because she was paid significantly less than Phizacklea.

The Court does not find that Plaintiffs have raised an issue of material fact as to Skiba's EPA claim. First, the Court does not find Plaintiffs have made out a prima facie case for wage discrimination under the EPA because there is no evidence showing that Skiba and the male Fitness Managers performed equal work under similar working conditions. Outside of sharing similar job titles and being grouped together on the Fitness Manager Salary Report, Skiba has presented no evidence that her role was equal and done in similar conditions to her male counterparts.

Even assuming that Skiba has made out her prima facie case, the burden shifts back to Defendants. The Court finds that Defendants have met their burden in showing that the pay differential is justified. Defendants noted that the two male employees who were paid more than Skiba were Regional Fitness Managers who had "much greater longevity" and the "job functions and working conditions were different." (Doc. No. 56 at 23). To refute these arguments, Plaintiffs

only cite generally to Defendants' Fitness Manager Salary Report and argue that Phizacklea made more money than Skiba from commissions. (Doc. No. 61 at 7) (citing Defendants' Ex. 2C; Doc. No. 57 at 77). The Court does not find that this evidence, on its own, raises an issue of material fact that wage discrimination took place. *One* male employee making more money than *one* female employee does not raise an issue of material fact concerning EPA wage discrimination, especially when that male employee has more longevity and performs different functions. Accordingly, the Court grants Defendants' summary judgment motion as to Skiba's wage discrimination claim.

     B.  <u>Cook & Dailey</u>.

Defendants contend that Cook's EPA claim must be dismissed as a matter of law because she was the only payroll specialist. (Doc. No. 56 at 23). After Cook was dismissed from her role, Defendants argue that her functions were "assumed by Ashley Sudwischer, who is female." (*Id.*). Thus, Defendants argue that Cook's EPA claim fails.

As to Dailey, Defendants argue that her EPA claim is barred by the relevant statute of limitations. The EPA typically provides a two-year limitations period. 29 U.S.C. § 255(a). If a willful violation is involved, the limitations period extends to three years. *Id.*; *see also Hill v. J.C. Penney Co., Inc.*, 688 F.2d 370, 374 (5th Cir. 1982). According to Defendants, during the three-year period preceding the Second Amended Complaint, all Club Specialists were female. (Ex. 2-B). Defendants maintain that other than Cook, Dailey was the highest paid. The company does not currently employ any Club Specialists because the position was eliminated after the COVID-19 pandemic. (*Id.*). Thus, Defendants argue that Dailey has no evidence to support her EPA claim.

Plaintiffs do not address Defendants' EPA arguments as to Cook or Dailey in their Response. When a party fails to defend a claim in response to a summary judgment motion, the claim is deemed abandoned. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006);

*Hargrave v. Fibrebroad Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983). In their Response, Plaintiffs refer only to evidence as to Skiba's EPA claims, not to Cook or Dailey's claims. Given that Plaintiffs have both failed to respond to Defendants' arguments and cited to no evidence to create an issue of material fact as EPA claims pertaining to Cook or Dailey, they have essentially waived these arguments. This Court hereby dismisses Cook and Dailey's EPA claims.

### VI.    Hostile Work Environment

A hostile work environment exists under Title VII when the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). To establish a prima facie case of a hostile work environment, a plaintiff must prove that she is: (1) part of a protected group; (2) was subjected to unwelcomed harassment; (3) the harassment complained of was based on a protected class; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment in question and failed to take prompt remedial action. *Eyob v. Mitsubishi Caterpillar Forklift America, Inc.*, 745 Fed. App'x 209, 215 n. 2 (5th Cir. 2018).

Defendants argue that Plaintiffs' Title VII hostile work environment claims fail because they cannot prove any actionable harassment and none of the Plaintiffs were subject to an adverse employment action. (Doc. No. 56 at 26). Specifically, Defendants maintain that Plaintiffs have no summary judgment evidence of actionable harassment and they all voluntarily resigned their positions, so there is no proof of any adverse employment action. (*Id.*).

In response, Plaintiffs argue that their terminations are evidence of a hostile work environment. (Doc. No. 61 at 8). Plaintiffs argue that "Skiba's constructive discharge" and Dailey

and Cook being "subjected to unwanted harassment, inappropriate comments on their weight, appearance, attractiveness, and intelligence" are "all objectively offensive comments." (*Id.*). Plaintiffs do not cite to any summary judgment evidence to support these contentions. Plaintiffs instead refer the Court to a transcript of a recording. According to Plaintiffs, the recording was of Defendant Murphy during a staff meeting, where he allegedly discussed Plaintiffs' separations from the company and his alleged reasons for terminating them. (*Id.*).

The Court finds that Plaintiffs' hostile work environment claims fail as a matter of law. First, Plaintiffs' arguments that they were subjected to inappropriate comments are unsupported by any evidence in the record. They attached no proper summary judgment evidence chronicling the alleged offensive comments, and the only mention of these comments is in the pleadings. Thus, on their own, these arguments fail to raise an issue of material fact or to establish any kind of actionable harassment under Title VII.

Second, Plaintiffs' attempt to cite to the recording of Murphy in a staff meeting as support for their contentions is similarly problematic. Plaintiffs claim they have "already produced" the recording. (Doc. No. 61 at 9). While Plaintiffs may have produced this recording, they failed to attach it as an exhibit in either their Response to Defendant's Motion for Summary Judgment (Doc. No. 61) or their Partial Motion for Summary Judgment. (Doc. No. 58). Thus, the Court cannot consider it. Without being properly proven, the recording has not been authenticated and is merely an unsupported allegation in the briefing.

Accordingly, Plaintiffs have failed to bring a prima facie case of a Title VII hostile work environment claim. All of Plaintiffs' arguments are wholly unsupported by summary judgment evidence and therefore fail to raise an issue of material fact. Thus, Defendants' Motion for Summary Judgment is granted as to Plaintiffs' Title VII hostile work environment claims.

20

## VII.    Skiba's Retaliation Claim

Finally, Defendants argue that Plaintiffs cannot make out a prima facie claim for retaliation under the FLSA, and that there is no genuine issue of material fact for Skiba's retaliation claim. Under the FLSA, it is unlawful for an employer to "discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). To state an FLSA retaliation claim, a plaintiff must demonstrate (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008); 29 U.S.C.A. § 215(a)(3).

Here, the Court finds that Skiba has presented a fact issue regarding the first element, participation in a protected activity. On the first element, Fifth Circuit law "allows an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it better captures the anti-retaliation goals of that section." *Hagan*, 529 F.3d at 626. To qualify as a "complaint," the employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation and the complaint must be sufficiently clear and detailed for a reasonable employer to understand it as an assertion of rights protected by the FLSA. *Lasater v. Tex. A&M Univ.-Commerce*, 495 Fed. App'x 458, 461 (5th Cir. 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13-14 (2011)).

Here, Skiba has presented evidence that she voiced her concerns to Defendants about her improper PTO deductions and unpredictable paycheck amounts, despite being a salaried employee. (*See* Doc. No. 58-4 at 4) (management emails presumably responding to Skiba's pay concerns).

21

Under Fifth Circuit precedent, voicing these concerns raises a genuine issue of material fact as to whether Skiba engaged in protected activity by filing an informal complaint.

Although there is a fact issue on the first element, the Court fails to find a fact issue exists on the second and third elements. The second element requires the plaintiff show she suffered adverse employment action, and the third requires she show a causal connection between the protected activity and the adverse employment action. Determining whether retaliation occurred requires application of the Supreme Court's burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (citing *Hagan*, 529 F.3d at 624). Under that framework—as applied to FLSA retaliation claims—if a plaintiff makes out a prima facie case, then the defendant must articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to offer evidence that this reason is pretextual. *Id.*

Here, Skiba alleges that she was constructively discharged. "Constructive discharge serves as a legal substitute for the discharge element of a prima facie case of discrimination." *Passons v. University of Texas at Austin*, 969 S.W.2d 560, 562 (Tex. App.—Austin 1998, no pet.). The constructive discharge doctrine permits an employee who resigns, rather than being terminated, to satisfy the discharge requirement of a discriminatory discharge claim. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010). The test for constructive discharge is whether the "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). Courts consider a number of employer actions, such as demotion, or a reduction in salary or job responsibilities, in deciding if the work conditions meet that standard. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 481 (5th Cir. 2008).

22

Evidence that an employee was forced to choose between resigning or being fired also is

sufficient to raise a fact issue regarding constructive discharge. *Gardner v. Abbott*, 414 S.W.3d

369, 383 (Tex. App.—Austin 2013, no pet.); *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336,

338–39 (5th Cir. 2014). In these so-called "ultimatum" cases, courts require something beyond the

employee's subjective belief that termination was inevitable. *See Faruki v. Parsons S.I.P., Inc.*,

123 F.3d 315, 319 (5th Cir. 1997) (standard was met when supervisor told employee he should

find another job, and that he had one week before he would be placed on indefinite unpaid leave);

*Davis v. City of Grapevine*, 188 S.W.3d 748, 766 (Tex. App.—Fort Worth 2006, pet. denied)

(standard was met when manager informed employee that "it would be in his best interest if he

decided to resign rather than be terminated"). Still, to establish a causal connection between the

protected activity and the subsequent adverse employment action (here, constructive discharge),

the plaintiff must show that the person retaliating against the employee knew about her protected

activity. *Munroe v. PartsBase, Inc.*, No. 08-80431-CIV, 2008 WL 4998777 (S.D. Fla. Nov. 20,

2008) (explaining that the defendant must be aware of the protected activity).

The Court finds that Plaintiff Skiba failed to present sufficient evidence to raise a fact issue

on her constructively discharge. As noted above, courts can consider a reduction in salary or an

"ultimatum" from a supervisor in evaluating whether an employee was constructively discharged.

Here, there is insufficient summary judgment evidence of either.[10] Not only is there insufficient

evidence of constructive discharge, but there is also no evidence of a causal link between her

---

[10] Plaintiffs argue in their Motion for Partial Summary Judgment that Defendants constructively discharged Skiba by (1) giving her "unfounded criticisms," (2) accusing her of "insubordination," (3) refusing to meet with her face-to-face, (4) excluding her from communication, and (5) issuing a "Counseling for Improved Performance" report that was to be a "final warning." (Doc. No. 58 at 24). Plaintiffs failed to cite evidence supporting these allegations. Despite Plaintiffs' failure to cite evidence, this Court finds the "Counseling for Improved Performance" report material and will consider it in evaluating constructive discharge. Still, the Court notes there is no evidence that the comments in the report were not accurate or that they were the result of protected activity.

protected activity and the alleged discharge. Specifically, Skiba has presented no evidence that her supervisor knew about her previous pay complaints.

In Skiba's "Counseling for Improved Performance" report, Skiba's supervisor issued her written counseling and threatened suspension without pay. (Doc. No. 58-14). The reason given for this discipline is: "employee on multiple occasions has been insubordinate (examples to be filed) to no less than 3 members of the GGH executive team (including CEO)" (*Id.*). The report then states that Skiba's "insubordination" was unprovoked and that her complaints have hurt management's abilities to perform their duties. More significantly, it "[mandates] these actions cease immediately," and says that the report shall function as a "final warning."

Skiba appears to argue that, given this report, a reasonable employee in her position would have felt the need to resign. She allegedly was left with the following choice: she could stop her "insubordination" of raising concerns about what she believed to be improper pay (and thus continue to be paid in the same way), or she could potentially be terminated (as implied by the "final warning"). As such, she argues, she has demonstrated a fact issue exists regarding her constructive discharge.

However, the Court has no evidence to suggest that this "insubordination" refers to Skiba's protected activity, nor is there evidence that the individual issuing the warning knew about her protected activity. Consequently, the performance report alone cannot raise a fact issue on constructive discharge. While Skiba attaches a page (Doc. No. 58-14, at 4) that allegedly contains comments by Skiba to her supervisor connecting the "insubordination" to her complaints, the Court cannot consider this document. Plaintiffs failed to prove up this document, and the Court cannot assume by looking at it that an exception to hearsay would apply. Moreover, these "facts" could have easily been raised by an affidavit from Skiba. Had the facts contained on this page been

24

proven up in any fashion (such as sworn in an affidavit by Skiba) then the Court may have been able to find a fact issue on constructive discharge. Without proper summary judgment evidence that the "insubordination" on the performance report refers to Skiba's pay complaints or that the supervisor knew about the protected activity, the Court has no tangible evidence that supports her claim. Skiba, therefore, has not raised a genuine issue of material fact supporting the second and third elements of retaliation. The Court hereby grants Defendants' Motion for Summary Judgment as to Skiba's FLSA retaliation claim.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment (Doc. No. 56) and **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 58). The Defendants' motion is granted as to all claims except that Plaintiffs Skiba and Dailey may proceed with their FLSA claims.

Signed at Houston, Texas, this 12 day of October, 2023.

Andrew S. Hanen
United States District Judge

25